**AUDIGER, INC., Pell Pharmaceuticals, Inc., and E. K. Demmel Company, Inc., Appellants,**

v.

**TOWN OF HAMILTON, ALABAMA et al., Appellees.**

No. 23937.

United States Court of Appeals Fifth Circuit.

July 27, 1967.

Karl R. Huber, Newark, N.J., Sadler, Sadler, Sullivan & Sharp, Birmingham, Ala., for appellants.

M. Camper O'Neal, Birmingham, Ala., Joe Payne, Huntsville, Ala., Rankin Fite, Hamilton, Ala., Dumas, O'Neal & Hayes, Birmingham, Ala., for appellees.

Before BROWN, Chief Judge, SIMPSON, Circuit Judge, and SUTTLE, District Judge.

PER CURIAM:

In this diversity case, tried to the court below without a jury, the sole questions raised on appeal by defendants-appellants ("Audiger") concern the issues of the amount and method of proof of damages awarded the plaintiff-appellee ("Town") by the trial court.

Town had leased to Audiger property on which it agreed to build improvements to be used for industry. In order to raise money for the construction, Town under an enabling amendment [1] to the Alabama

1. Section LXXXIV, proclaimed ratified November 20, 1950.

Constitution issued and sold interest bearing Warrants, dated October 1, 1964. Audiger failed to pay the first and second monthly rent installments due. The third was paid in part. The relief sought and granted in the suit was (1) a determination of default, (2) termination and cancellation of Audiger's interest in the Lease Agreement, and (3) a money judgment for the damages flowing from breach of the Lease Agreement.

The first date upon which the Warrants were callable for redemption was October 1, 1974. The outstanding Warrants had a face value of $682,000.00. From the proceeds of sale Town had on hand at the time of trial, including cash and obligations of the United States, $656,862.39. Plaintiff's Exhibit 14 was a calculation of the cost to the Town of repurchasing the Warrants for retirement at the same price the Warrants were sold to the public. The amount required on October 1, 1974, for this purpose was $769,199.30. The court concluded that the Town, without substantial risk of further injury or damage to its credit, could minimize or mitigate its damages by repurchasing the Warrants for retirement at a cost of $769,199.30. The difference beween this amount and the amount of the proceeds on hand ($656,862.39) is $112,336.91. This was the amount of damages awarded. The court made an additional calculation finding that the amount of past due rent was $45,540.77 and finding that when the plaintiff was made whole for the rent in this amount there would still be a deficiency of $66,796.14. The sum of these figures totals $112,336.91, the amount awarded as damages in order to make the Town whole because of the default suffered.

.The trial court correctly, we think, concluded that repurchase of the Warrants for retirement at the price for which they were marketed did not involve any substantial risk of further injury or damage to the Town's credit rating but on the other hand, that the Town should not be required further to risk its credit rating by attempting to "trade on the default" and to try to buy the Warrants at a lesser price because they were in default. This gave due consideration to mitigating factors. See the discussion of mitigation of damages in Williston on Contracts, Rev. Ed., pages 3795 and 3796, Section 1353, Vol. 5, and see further 22 Am. Jur.2d Damages, page 54, Section 32.

The Warrants had been awarded by the Town Council and ordered sold to a security dealer at $647,900.00 plus accrued interest to date of delivery. Exhibit 14 (supra) showed the amounts at which the Warrants were marketed by the dealer to the public with the single exception of $28,000.00 of Warrants which were never marketed. A large portion of appellants' brief is devoted to discussion and criticism of Exhibit 14 which they assert is a "hypothetical calculation". We have examined the Exhibit and find this criticism unwarranted.

We conclude that the trial court applied permissible standards in awarding the damages. The judgment is affirmed.